2012 OK CR 15

Kevin Duane BARNARD, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–2010–744.

Court of Criminal Appeals of Oklahoma.

Oct. 30, 2012.

Brian Martin, Tulsa, OK, attorney for defendant at trial.

Christina Wolfram, Assistant District Attorney, Tulsa, OK, attorney for state at trial.

Terry J. Hull, Norman, OK, attorney for appellant on appeal.

E. Scott Pruitt, Oklahoma Attorney General, Sandra D. Rinehart, Assistant Attorney General, Oklahoma City, OK, attorneys for appellee on appeal.

## OPINION

A. JOHNSON, Presiding Judge.

¶1 Appellant Kevin Duane Barnard was tried by jury and convicted in the District Court of Tulsa County, Case No. CF–2007–2419, of Making Lewd or Indecent Proposals to a Child in violation of 21 O.S.Supp.2006, § 1123(A)(1) after one former conviction (Count 1).[1] and Using a Computer System or Network for the Purpose of Committing a Felony in violation of 21 O.S.2001. § 1958 (Count 2).  The jury set punishment as life imprisonment on Count 1 and ten years imprisonment on Count 2. District Judge Dana L. Kuehn, who presided at trial, sentenced Barnard accordingly.  From this Judgment and Sentence Barnard appeals, raising the following issues:

(1) whether the evidence was sufficient to support the jury's verdicts under its instructions;

(2) whether his convictions and sentences for both using a computer to make a lewd or indecent proposal to a child (Count 1) and using a computer to commit the crime of making a lewd or indecent proposal to a child (Count 2), violated his constitutional and statutory rights to be free from double jeopardy and multiple punishment;

(3) whether the trial court's issuance of a non-uniform jury instruction constitut-

---

**1.** Making Lewd or Indecent Proposals to a Child in violation of 21 O.S.Supp.2006, § 1123(A)(1), is a crime that is subject to the 85% limit on parole eligibility set out in 21 O.S.Supp.2002, § 13.1. Barnard's jury was so instructed.

ed plain error violating his rights to a fair sentencing trial on Count 1;

(4) whether the judgment and sentence on Count 2 is inaccurate and should be corrected by entry of a *nunc pro tunc* judgment and sentence; and

(5) whether consecutive service of his sentences is excessive under the facts and circumstances of his case.

¶ 2 For the reasons set out below, we affirm the Judgment and Sentence for Count 1, but reverse and remand with instruction to dismiss Count 2.

## FACTUAL BACKGROUND

¶ 3 On April 11, 2007, two girls brought a note someone had given them to the children's librarian at the Brookside Library in Tulsa, Oklahoma. The note said "You've got a friend—if you'd want one. K?" (Tr. Vol. 1 223; State's Exhibit 8). The note also included the following handwritten information:

Kevin Barnard

*im1friend@yahoo.com*

(918) 855–9748

(Tr. Vol. 1 246; State's Exhibit 8) The librarian gave the note to the library manager who contacted the Tulsa police on April 12, 2007.

¶ 4 After receiving the note, Tulsa police detective Scott Gibson set up an e-mail account posing as a twelve-year-old girl named "Angela." He exchanged numerous e-mails with the person using the e-mail address listed on the note between April 23, 2007 through May 2, 2007. Gibson determined that the e-mail correspondent was Barnard. Detective Gibson made clear in his e-mails that Angela was twelve years old, and in one e-mail response, Barnard said "you DO know that I'm 30, right?" (Tr. Vol. 1 259; State's Exhibit 3 at 4).

¶ 5 The content of the e-mails quickly progressed to a discussion of subjects of a sexual nature. Barnard suggested that he and Angela get together and that Angela "wear something like a nice blouse, medium length skirt, and maybe nothing underneath" (Tr. Vol. 1 266; State's Exhibit 3 at 8). He also asked her not to wear a bra and asked "[i]s there anything else that you'd like to do with me? Anything at all, no matter what it may be? Be honest—please" (Tr. Vol. 1 267; State's Exhibit 3 at 10). Angela reminded him she was twelve and a virgin and he said "I might like to be more than friends. But that's up to you. Urn, can I ask if you might not want to be a virgin much longer? Maybe we could try having a little bit of fun but if you'd tell me to stop, I would stop right then and there. Okay" (Tr. Vol. 1 268; State's Exhibit 3 at 11). Barnard then began discussing sex and told Angela he "would be really gentle, and if you don't like it, I'll stop" (Tr. Vol. 1 268; State's Exhibit 3 at 10–13). He assured her he did not have any diseases and that he was sterile. They discussed specific details of sexual intercourse and Barnard told her that he loved her.

¶ 6 Barnard set up a meeting with Angela in Tulsa, but did not show up. He continued to communicate with her, however, and made further comments about sexual relations, including a very graphic, detailed explanation about oral sex acts that he would like her to perform on him. Detective Gibson, acting as Angela, attempted to set up another meeting in Tulsa, but Barnard responded that he could not be there because he was not in Tulsa any more.

¶ 7 On May 2, 2007, Detective Gibson determined that Barnard was sending e-mails from a public library in Bristow, Oklahoma. He then set up a plan to arrest Barnard there. Before the plan was executed, however, Barnard changed his location and sent e-mails from a public library in Bartlesville, Oklahoma.

¶ 8 The Bartlesville Police Department assisted in the investigation by sending officers to the Bartlesville Library. Shortly after his arrival at the library, Detective Adam Duncan of the Bartlesville Police Department saw Barnard vacate a computer workstation. After Barnard left, Duncan posted an out-of-order sign on the computer and secured it. The computer was later taken to the Bartlesville Police Department property room. The computer was eventually transferred to the Tulsa Police Department for forensic analysis. E-mails retrieved from the computer

matched the e-mails sent and received by Detective Gibson.

¶ 9 Barnard was arrested while leaving the library. A 3 × 5 card found in his wallet had the name "Angela" on it and made reference to meeting Angela on a specific date and time at a Tulsa park. In a recorded statement made to a Tulsa Police Department detective Barnard did not deny sending the e-mails, but stated that it was his intent to wait until Angela was at least eighteen years old to have sex with her. He said this was why he did not show up at the arranged meeting.

## DISCUSSION

### 1.

### Sufficiency of the Evidence and Jury Instructions

¶ 10 Barnard claims that the evidence was insufficient to support the jury's guilty verdict on either Count 1 or 2 for the crimes of making a lewd or indecent proposal to a child under sixteen years of age based on the elements of the offense that were included in the instruction given to the jury. Barnard's jury was instructed as follows:

### INSTRUCTION NO. 19

No person may be convicted of **LEWD OR INDECENT PROPOSALS** to a child under sixteen unless the State has proved beyond a reasonable doubt each element of the crime: These elements are:

First, the defendant was at least three years older than the victim;

Second, who knowingly and intentionally;

Third, made any electronically/computer generated lewd or indecent proposal

Fourth, to any child under sixteen years of age;

Fifth, for the child to have unlawful sexual relations/intercourse with any person.

**2.** The language "or other individual the person believes to be a child under sixteen (16) years of age" was added to Section 1123(A)(1) in 2002. *See* Okla. Sess. Laws 2002, ch. 460, § 11 and ch. 110, § 2; 21 O.S.Supp.2002, § 1123(A)(1) and 21 O.S.2011. S 1123(A)(1). At the time of Bar-

(O.R. 213). This instruction was taken verbatim from Instruction No. 4-129, OUJI-CR(2d)(Supp. 2000).

¶ 11 Barnard contends that the evidence was insufficient to support a conviction under this instruction because: (1) no evidence was presented that he was at least three years older than Detective Scott Gibson, the actual person with whom he was communicating; and (2) there was no evidence that a proposal was made to any person under the age of sixteen, because the alleged proposal was made to Detective Gibson, not an actual child. Both of these contentions are correct to the extent the evidence is simply matched against the elements listed in the instruction. But, noting that the statute defining the crime of making a lewd or indecent proposal to a child includes an alternative element, Barnard also complains that the jury was not instructed on the law applicable to the offense because the jury was not instructed on this alternate element.

¶ 12 The relevant portions of the statute under which Barnard was charged in Count 1 provide as follows:

A. It is a felony for any person to knowingly and intentionally:

1. Make any oral, written, or electronically or computer-generated lewd or indecent proposal to any child under sixteen (16) years of age, or other individual *the person believes to be a child under sixteen (16) years of age,* for the child to have sexual relations or sexual intercourse with any person [.]

. . . .

5. ... The provisions of this section shall not apply unless the accused is at least three (3) years older than the victim.

21 O.S.Supp.2006, § 1123(A)(1).[2] Under the plain language of this statute, it was not necessary for the State to prove that Barnard was at least three years older than some actual child, or that the proposal was

nard's trial in June 2010, however, OUJI Instruction No. 4-129 had not been revised to incorporate this language. The instruction was amended during the current OUJI revision cycle and now includes the omitted text. *See* Instruction No. 4-129, OUJI-CR(2d) (Supp. 2012).

made to an actual child who was younger than the age of sixteen; the State need prove only that the indecent proposal was made to any individual Barnard **believed** to be under sixteen years of age and that he (Barnard) was at least three years older than that pretextual child. As can be seen from the text of the jury instruction above, however, this language was not included as an element in the instruction given to the jury. Because the jury instruction omitted the element of mere belief that the proposal was made to a child under sixteen years of age as an alternative to a proposal having been made to an actual child, the real question presented in this claim is whether the omitted element rendered the instruction fatally defective. And, this is the crux of Barnard's claim.

¶ 13 Barnard did not object to the instruction.[3] The claim is therefore waived and reviewed only for plain error. *See Hogan v. State,* 2006 OK CR 19, ¶ 38, 139 P.3d 907, 923 ("Hogan did not object to the trial court's manslaughter instructions on this basis; his failure to do so forfeits any error unless he can show plain error"); *Black v. State,* 2001 OK CR 5, ¶ 56, 21 P.3d 1047, 1068 ("[b]ecause Appellant failed to object at trial to the self-defense instructions on the grounds he now asserts, he has waived all but plain error"). To be entitled to relief for plain error, a defendant must show: (1) the existence of an actual error; (2) that the error is plain or obvious; and (3) that the error affected his substantial rights, meaning that the error affected the outcome of the proceeding. *Hogan,* 2006 OK CR 19, ¶ 38, 139 P.3d at 923.

¶ 14 Nevertheless, even though we review for plain error, rather than error, the harmless error doctrine of the United States Supreme Court's decisions in *Chapman v. California,* 386 U.S. 18, 23–24, 87 S.Ct. 824, 827–828, 17 L.Ed.2d 705 (1967) and *Neder v. United States,* 527 U.S. 1, 15–16, 119 S.Ct. 1827, 1837, 144 L.Ed.2d 35 (1999), still apply to our analysis here. This is because the only way to determine whether the omission of the element from the jury instruction affected Barnard's substantial rights is to evaluate the error for its effect on the jury verdict, the same test applied in *Neder,* albeit for harmless error in that case, not plain error. *See e.g., United States v. Bohuchot,* 625 F.3d 892, 902–903 (5th Cir.2010) (importing *Chapman–Neder* harmlessness test into review of incomplete jury instruction and finding no plain error where instruction omitted intent element).

¶ 15 The question to be resolved under this analysis then, is "whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the jury verdict obtained,'" or in other words, whether it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error," such as when the "omitted element is supported by uncontroverted evidence." *Neder,* 527 U.S. at 18, 119 S.Ct. at 1838; *see also Bohuchot,* 625 F.3d at 902–903. If the error in this case is harmless under the *Chapman–Neder* test, it cannot, by definition, have affected the outcome of Barnard's trial, and cannot have affected Barnard's substantial rights under our plain error test.[4]

---

**3.** Not only did Barnard not object to the instruction or request an alternative, he actually used the missing element as a defense in closing argument. In particular, defense counsel argued to the jury that

> Number four, "To any child under 16 years of age." It actually has to be a child. *It doesn't say someone the defendant believed to be a child.*
>
> . . .
>
> "To any child under 16 years of age." There were absolutely no children involved in this. The police acted too quickly. Since they cannot prove that a child under 16 was involved in this, I'm taking back my flour [referring to previously mentioned analogy for baking a cake in which it was asserted that a guilty

verdict like a cake required all ingredients or elements]. Instruction 19, ladies and gentlemen, these are the elements of the crime. These are the ingredients that make your cake. They have to prove each one of those beyond a reasonable doubt. That's the only way you get your cake. There is no child. There is no more than three years older than anybody. Your oath was if they don't prove them all beyond a reasonable doubt, it's not guilty.

(Tr. Vol. 3 467, 469)(emphasis added).

**4.** In *United States v. Bohuchot,* cited above, the United States Court of Appeals for the Fifth Circuit incorporated the *Chapman–Neder* harmlessness test into its own plain error analysis of a defective jury instruction, as we do here. Using

¶ 16 In Barnard's case, it is clear beyond a reasonable doubt that a rational jury would have found him guilty of the crime making a lewd or indecent proposal to a child despite the incomplete jury instruction because Barnard's belief of his intended child-victim's age was supported by strong uncontroverted evidence. That is, the jury had sufficient undisputed evidence to conclude that Barnard believed the person to whom he directed the indecent proposals was a child under sixteen years of age. Specifically, Detective Gibson, posing as a child named Angela, told Barnard several times that she was twelve years old, and Barnard admitted knowing or believing that Angela was twelve years old. Furthermore, Barnard did not dispute these facts; he even stipulated that he was thirty years old. Thus, the evidence was overwhelming and uncontroverted that Barnard was more than three years older than Angela, Detective Gibson's avatar and Barnard's intended victim.

¶ 17 On this evidence, fully aware that there was no actual child-victim, the jury nonetheless found Barnard guilty despite not being instructed it could do so by finding that he only believed he was propositioning a child. Given the strong and uncontested evidence of Barnard's belief that he was communicating with a twelve-year-old child, it is obvious that a properly instructed jury would have been even more likely to return a guilty verdict. On this basis, it is clear beyond a reasonable doubt that the defective jury instruction did not contribute to the verdict. The error is harmless beyond a reasonable doubt. *See Neder,* 527 U.S. at 17, 119 S.Ct. at 1837 ("where a reviewing court concludes

beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless"). There is no plain error here.

¶ 18 In connection with this claim, Barnard also contends that the trial court erred by issuing the following non-uniform instruction:

### INSTRUCTION NO. 21

The fact an undercover operative or law enforcement officer was involved in the detection and investigation of an offense pursuant to this section shall not constitute a defense to a prosecution for **LEWD OR INDECENT PROPOSAL TO A CHILD.**

(O.R. 215). Barnard contends that this instruction is an entrapment instruction that was improperly given because he never raised an entrapment defense. Barnard argues further that the instruction is misleading, allowing that the State need not prove those portions of Instruction 19 listing the elements of the offense requiring proof that the indecent proposal was made to a child under sixteen years of age. Indeed, Barnard points to a note from jurors that asked:

1) Does element one and four of Instruction # 19 conflict with Instruction # 21?

2) Can we have a layman explanation of instruction # 21.

(Unnumbered Court Exhibit). The trial court replied that:

You have been given all of the law and evidence that is proper for you to consider

---

this methodology, the *Bohuchot* court determined that omission of the intent element from an instruction on conspiracy to commit money laundering was not plain error. The *Bohuchot* court explained its rationale as follows:

The defendants did not object in the district court on either of these grounds. Our review, therefore, is for plain error. We will assume, without deciding, that the jury instructions did not require the jury to find all the necessary elements to convict the defendants of conspiracy to commit money laundering. Even were we reviewing for error, rather than plain error, the harmless error rule of the Supreme Court's decision in *Chapman v. California* would apply when, as here, an element of an offense is

omitted or misdescribed in a jury charge [citing *Neder*]. The question we would ask, had error been preserved, is "whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained' " [quoting *Neder*]. Error would be harmless if no jury could reasonably find that Wong and Bohuchot did not agree to transfer funds with the intent to promote the carrying on of specified unlawful activity and did not agree to transfer funds knowing that the transfer was designed to conceal the nature, location, source, ownership or control of proceeds of specified unlawful activity.

*Bohuchot,* 625 F.3d at 902–903 (internal citations omitted).

in reaching a verdict. Please continue deliberations.

(Unnumbered Court Exhibit).

¶ 19 The State argues that this supplemental instruction is not an entrapment defense instruction, but rather is an explanation of the elements of the crime charged. According to the State, the instruction supplemented the uniform instruction given as Instruction No. 19 by allowing the jury to find the defendant guilty if a police officer is posing as a victim.

■■■ ¶ 20 Barnard objected to this instruction, preserving the alleged error for this Court's review. *Short v. State*, 1999 OK CR 15, ¶ 68, 980 P.2d 1081 1103. A trial court's rulings on jury instructions are reviewed for an abuse of discretion. *Cuesta–Rodriguez v. State*, 2010 OK CR 23, ¶ 59, 241 P.3d 214, 233–234. If the instructions as a whole accurately state the applicable law, there is no abuse of discretion. *Gilson v. State*, 2000 OK CR 14, ¶ 96, 8 P.3d 883, 914.

¶ 21 In *Robinson v. State*, 1973 OK CR 152, ¶ 11, 507 P.2d 1296, 1299, *overruled on other grounds by McInturff v. State*, 1976 OK CR 226, ¶ 12, 554 P.2d 837, 841, this Court explained that "[o]ne who is instigated, induced, or lured by officer of law or other person, for purposes of prosecution, into commission of crime which he had otherwise no intention of committing may avail himself of the defense of entrapment." Instruction 21 did not instruct jurors on these elements; it merely informed jurors that the fact that a law enforcement officer was involved in the detection or investigation of an offense of making a lewd or indecent proposal to a child was not a defense to that charge. This instruction, which was taken nearly verbatim from 21 O.S.Supp.2006, § 1123(E), is simply a restatement of this Court's general explanation of when an entrapment defense is *not* available. Specifically, in *Robinson*, this Court explained that the "[p]rinciple of entrapment places no limitation on right of officers to obtain evidence of any crime originating in [the] mind of another; and an officer may, when acting in good faith with

[a] view to detecting crime, make use of deception, trickery or artifice." *Id.*

¶ 22 The evidence showed that Detective Gibson used deception to investigate the crime (i.e., he represented to Barnard that he was a twelve year old girl). There was no evidence, however, that Detective Gibson instigated the encounters to lure Barnard into making a lewd or indecent proposal. To the contrary, it was Barnard who initiated the events leading to his lewd proposals to Angela by delivering a note to two schoolgirls inviting them to contact him by e-mail. Because Instruction 21 was an accurate statement of the law (that a police officer may use deception, trickery, or artifice to detect or investigate a crime), and because the instruction was warranted by evidence showing that a police officer used deception and artifice in the investigation of the crime, the trial court judge did not abuse her discretion by giving the instruction to the jury.

■■■ ¶ 23 That portion of Barnard's claim contending that Instruction 21 misled the jury to believe that it overrode portions of Instruction 19's element of the offense requiring proof that the indecent proposal was made to "a child under sixteen (16) years of age," also lacks merit. Because Instruction 21 was an accurate statement of the law, any confusion about the relationship between Instructions 19 and 21 could only arise from Instruction 19's erroneous omission of language permitting a finding of guilt for a lewd proposal to an individual the accused "believes to be a child under sixteen (16) years of age." To the extent, therefore, that the jury may have read Instructions 19 and 21 together to permit the substitution of a law enforcement officer using deception for an actual child victim, the effect was ultimately curative of the defective Instruction 19 because the substitution led to the same result that would have been permitted under the omitted language: a finding that, as a result of Detective Gibson's artifice and deception, Barnard believed he was propositioning a child under sixteen years of age.[5]

5. This Court addressed a nearly identical claim in *Hunter v. State*, No. F–2007–856 (Okla.Crim. Oct. 10, 2008)(not for publication). In *Hunter*,

with four judges concurring and one judge concurring in result, this Court found error, but not reversible plain error, where jurors were not

## 2.

### Double Jeopardy and Multiple Punishment

■ ¶ 24 Barnard was convicted in Count 1 of making a lewd or indecent proposal to a child under sixteen years of age by computer in violation of 21 O.S.Supp.2006, § 1123(A)(1). He was also convicted in Count 2 of using a computer to commit a felony in violation of 21 O.S.2001 § 1958: using a computer to commit the crime of indecent proposal to a child. Barnard contends that convictions on both counts violate the double jeopardy provisions of the United States and Oklahoma constitutions as well as the statutory multiple punishment prohibition found at 21 O.S.2001. § 11.

■ ¶ 25 "Claims of violations of double jeopardy protections are waived where they were not raised in the trial court." *Head v. State*, 2006 OK CR 44, ¶ 9, 146 P.3d 1141, 1144. Barnard raised neither a constitutional double jeopardy claim nor a statutory multiple punishment claim in the district court. He has therefore waived the claims, and this Court reviews only for plain error. *Id.* Under plain error analysis, the first task is to determine whether error (i.e., deviation from a legal rule) occurred, and if so, whether that error was plain or obvious. *Hogan*, 2006 OK CR 19, ¶¶ 38–39, 139 P.3d at 923. This Court has never addressed in a published opinion the question of whether the making of a lewd or indecent proposal to a child using a computer in violation of 21 O.S. § 1123, and using a computer to violate an Oklahoma statute (i.e., 21 O.S. § 1123 by making a lewd or indecent proposal to a

child) in violation of 21 O.S. § 1958, constitute a single act not subject to separate punishments under 21 O.S.2001. § 11(A) or the Double Jeopardy Clause of the United States Constitution.[6] This issue presents a question of first impression.

■ ¶ 26 Title 21 O.S.2001. § 11(A). governs multiple punishments for a single criminal act. Section 11 provides in relevant part that:

[A]n act or omission which is made punishable in different ways by different provisions of this title may be punished under any of such provisions, ... but in no case can a criminal act or omission be punished under more than one section of law; and an acquittal or conviction and sentence under one section of law, bars the prosecution for the same act or omission under any other section of law.

21 O.S.2001, § 11(A). Because Section 11 complements the double jeopardy protections of the Oklahoma and United States Constitutions, a traditional double jeopardy analysis is conducted only if Section 11 does not apply. *Mooney v. State*, 1999 OK CR 34, ¶ 14, 990 P.2d 875, 882–883.

¶ 27 The proper analysis of a Section 11 claim focuses on the relationship between the crimes. *Davis v. State*, 1999 OK CR 48, ¶ 13, 993 P.2d 124, 126. If the crimes truly arise out of one act, Section 11 prohibits prosecution for more than one crime, absent express legislative intent. *Id.* Thus, it is first necessary to examine the relationship between the two crimes to determine whether they constitute a single act.

---

instructed on the element of the defendant's belief he was communicating with a child under the age of sixteen years of age. According to *Hunter*, the error did not require reversal because "[j]urors could have understood from the context of the instructions given and evidence presented that they had to find Hunter *believed* 'Jessica' [a child being impersonated by a sheriff's deputy] to be under sixteen years of age." *Hunter* at 6 n. 13 (emphasis added). Similarly, in this case, jurors could have understood from the context of the instructions given, especially Instructions 19 and 21, and from the evidence presented, that they had to find Barnard believed Angela to be under sixteen years of age.

6. In support of his argument on this claim, Barnard brings our attention to the unpublished case of *Hunter v. State*, cited previously in note 5. *Hunter* presented a nearly identical multiple punishment claim as is raised here. Again, with four judges concurring and one judge concurring in result, the *Hunter* court found that convictions for making a lewd or indecent proposal to a child using a computer in violation of 21 O.S.S. 1123 and using a computer to violate an Oklahoma statute in violation of 21 O.S. § 1958 (i.e., using a computer to violate 21 O.S.S. 1123 by communicating a lewd or indecent proposal to a child), violated the multiple punishment provisions of 21 O.S.2001, § 11. For the reasons set out in the main text, we reach the same result.

¶ 28 Barnard correctly points out that the language of Count 1 of the Amended Information alleging the offense of making a lewd or indecent proposal to a child was hopelessly garbled. Specifically, Count 1 of the Amended Information alleged the following:

(Count 1)

21 O.S. § 1123

KEVIN DUANE BARNARD, between 4/23/2007 and 5/2/2007, in Tulsa County, State of Oklahoma and within the jurisdiction of this Court, did commit the crime of **LEWD OR INDECENT PROPOSAL TO A CHILD,** a Felony, by unlawfully, feloniously, knowingly and intentionally orally make a lewd and indecent proposal to one Det. Scott Gibson a male child under the age of sixteen years, for such child to made electronically on computer generated lewd and indecent proposals to Det. Scott Gibson who believed top to be a 12 year old child named Angela for Angela to have unlawful sexual relations or sexual intercourse with him. The said defendant being then and there a person over the age of 18–male; 18, to wit: 30 years of age and being then and there three years or more older than the age of the aforesaid Angela,

(O.R. 57). At trial, the State amended Count 1 to remove the nonsensical language, particularly, the language alleging that Barnard had "orally" made a lewd or indecent proposal to the fictional twelve-year-old Angela. This amendment conformed the Information to the evidence at trial, which showed that all communications between Detective Gibson, representing himself as twelve-year-old Angela, and Barnard, were electronic communications made via computer. Thus, as amended at trial, Count 1 charged Barnard with the felony crime of making a lewd or indecent proposal to a child under sixteen years of age using a computer in violation of 21 O.S.Supp.2006. § 1123(A)(1).

¶ 29 Count 2 charged Barnard as follows:

(Count 2)

21 O.S. § 1953

KEVIN DUANE BARNARD, between 4/23/2007 and 5/2/2007, in Tulsa County, State of Oklahoma and within the jurisdiction of this Court, did commit the crime of **USING A COMPUTER TO COMMIT A**

**FELONY,** a Felony, by unlawfully, feloniously, willfully, knowingly and intentionally used a computer to commit the crime of Indecent Proposal to Minor Child, Contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the State.

(O.R. 57). As can be seen from the caption of this count, Count 2 purported to allege a violation of 21 O.S.Supp.2002. § 1953. However, 21 O.S. § 1953, does not set out a crime of using a computer to commit a felony as alleged in the text of the Information. Title 21 O.S.2001. § 1958, on the other hand, sets out something close by making it a crime to "communicate with, store data in, or retrieve data from a computer system or computer network for the purpose of using such access to violate any of the provisions of the Oklahoma Statutes." The State amended Count 2 at trial to reflect a violation of Section 1958. The jury instruction on the amended Count 2 read as follows:

**INSTRUCTION NO. 22**

No person may be convicted of USING A COMPUTER TO COMMIT A FELONY unless the State has proven beyond a reasonable doubt each element of the crime. These elements are:

First, the defendant communicated with a computer system or computer network;

Second, for the purpose of using the computer system or network access; and

Third, to violate any provision of Oklahoma Statutes to wit: Oklahoma Statutes title 21 section 1123—LEWD OR INDECENT PROPOSAL TO A CHILD.

(O.R. Amd. 22).

¶ 30 When the amended language of Count 1 and its corresponding jury instruction is compared with the amended language of Count 2 and its corresponding jury instruction, it is readily apparent that Count 1 charged Barnard with the felony crime of making a lewd or indecent proposal to a child under sixteen years of age using a computer in violation of 21 O.S.Supp.2006, § 1123(A)(1), and Count 2 charged him with the felony crime of using a computer to violate an Oklahoma statute in violation of 21 O.S. § 1958: i.e., using a computer to making

an indecent or lewd proposal to a child in violation of 21 O.S.Supp.2006, § 1123(A)(1). As alleged in the charging information, and in light of the evidence adduced at trial and from an examination of the jury instructions, it is apparent that the two charged crimes are not tangentially related to the other, nor do they constitute a series of separate and distinct crimes arising during a single course of conduct. Rather, Counts 1 and 2 allege identical crimes arising from the same conduct. Barnard is being punished twice for the same act. This is error that is plain or obvious.

¶ 31 Under plain error review, this Court does not automatically reverse, however, upon a finding of plain or obvious error. Under plain error analysis, we also inquire into whether the error affected Barnard's substantial rights, meaning the error must have been one that affected the outcome of the proceeding. *Hogan*, 2006 OK CR 19, ¶ 38, 139 P.3d at 923; *see also* 20 O.S.2001. § 3001.1 ("No judgment shall be set aside ... by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or for any matter of pleading or procedure, unless it is the opinion of the reviewing court that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."). Even then, we will only correct the error "if the error 'seriously affect[s] the fairness, integrity, or public reputation of the judicial proceedings' or otherwise represents a 'miscarriage of justice.'" *Hogan*, 2006 OK CR 19, ¶ 38, 139 P.3d at 923 (quoting *Simpson v. State*, 1994 OK CR 40, ¶ 30, 876 P.2d 690, 701); 20 O.S.2001. § 3001.1.

¶ 32 In this instance, the double prosecution certainly represents a violation of Barnard's substantial rights in that he would not have received a second felony conviction and ten year sentence had the error not been made. Furthermore, allowing this statutorily proscribed double punishment to stand would undoubtedly bring the fairness and integrity of the entire trial into serious question. Barnard's conviction on Count 2 is the result of plain error that rises to the level

requiring reversal. *Hogan*, 2006 OK CR 19, ¶ 38, 139 P.3d at 923; 20 O.S.2001. § 3001.1.

¶ 33 Because we resolve this claim as a violation of 21 O.S.2001, § 11. it is not necessary to reach Barnard's additional claim that his convictions constitute violations of the double jeopardy provisions of the United States and Oklahoma constitutions.

### 3.
### Non-uniform Jury Instruction on Post–Imprisonment Supervision

¶ 34 Barnard claims that a non-uniform jury instruction concerning post-imprisonment supervision violated his rights to due process under the United States and Oklahoma constitutions. Barnard did not object to the instruction. The claim is therefore waived and reviewed only for plain error. *See Warner v. State*, 2006 OK CR 40, ¶ 135, 144 P.3d 838, 881 (holding that failure to object to jury instruction waives all but plain error review).

¶ 35 The instruction Barnard complains about stated:

> In addition to the preceding term, if the term imposed by the jury is at least 2 years, but less than life, the defendant shall be required to have a term of not less than 3 years post-imprisonment supervision under conditions determined by the Department of Corrections.

(O.R. 224). This instruction was based on 21 O.S.Supp.2007, § 1123(F), which provides:

> Except for persons sentenced to life or life without parole, any person sentenced to imprisonment for two (2) years or more for a violation of this section shall be required to serve a term of post-imprisonment supervision pursuant to subparagraph f of paragraph 1 of subsection A of Section 991a of Title 22 of the Oklahoma Statutes under conditions determined by the Department of Corrections. The jury shall be advised that the mandatory post-imprisonment supervision shall be in addition to the actual imprisonment.

¶ 36 This subsection was enacted in 2007 and became effective on November 1, 2007. *See* Okla. Sess. Laws, 2007, ch. 261, § 19. The crimes for which Barnard was convicted

occurred between April 23, 2007 and May 2, 2007, and the State concedes that this subsection was not in effect when the charged crimes occurred. As a result, post-imprisonment supervision was not an option for Barnard's punishment. *See Williams v. State*, 2002 OK CR 39, ¶ 4, 59 P.3d 518, 519 (holding that absent an express indication that the legislature intended a law to apply retroactively, a defendant is entitled to the law in effect at the time of the commission of the crime). The jury was improperly instructed.

¶ 37 Despite this error, the State contends that because neither the jury nor the judge imposed a term of post-imprisonment supervision, the error was harmless and not plain error. Barnard, on the other hand argues that the error was not harmless because the instruction somehow communicated to jurors that he would be placed back into the community if he was given less than a life sentence. In other words, Barnard argues that jurors opted to give him a life sentence in lieu of some lesser term of years to prevent him from receiving a three year term of post-imprisonment supervision.

¶ 38 Under plain error review, it is the appellant's burden to show that the alleged error affected a substantial right. *Postelle v. State*, 2011 OK CR 30, ¶ 25, 267 P.3d 114, 129–130. That is, the appellant must show that the error affected the outcome of the proceeding. *Hogan*, 2006 OK CR 19, ¶ 38, 139 P.3d at 923; *see also Robinson v. State*, 1995 OK CR 25, ¶ 19, 900 P.2d 389, 397 (holding that "burden is upon the appellant to establish for the appellate court the fact that he was prejudiced in his substantial rights by the commission of the error").

¶ 39 Barnard neither points to any evidence in the record, nor proffers any extra-record evidence supporting his assertion that the jury imposed a life sentence to prevent him from ever receiving a three year term of post-imprisonment supervision. Because Barnard did not receive a term of post-imprisonment supervision as part of his sentence, and because there is no evidence that the jury somehow relied on this erroneous instruction to determine his term of imprisonment, Barnard fails to establish that the erroneously given instruction on post-impris-

onment supervision rises to the level of having affected a substantial right. There is no plain error.

### 4.

### *Nunc Pro Tunc* Correction to Judgment and Sentence

¶ 40 The Judgment and Sentence states that Barnard was convicted in Count 2 for using a computer to commit a felony in violation of 21 O.S.Supp.2002, § 1953(A)(2). As discussed above in Proposition 2, however, Section 1953 does not have a provision proscribing such conduct. The parties recognized this error at trial, and the charge was orally amended to allege a violation of 21 O.S:2001, § 1958, which prohibits "communicat[ing] with, stor[ing] data in, or retriev[ing] data from a computer system or computer network for the purpose of using such access to violate any of the provisions of the Oklahoma Statutes." Nevertheless, despite the amended charge, the Judgment and Sentence reflects a conviction for a violation of 21 O.S.Supp.2002, § 1953(A)(2).

¶ 41 Barnard requests that if his conviction on Count 2 is not reversed, that the Judgment and Sentence be corrected *nunc pro tunc* to reflect the correct statute under which he was tried and convicted. The State agrees with Barnard that the Judgment and Sentence reflects the wrong statute of conviction and joins in his request for a *nunc pro tunc* correction. Because we reverse the conviction on Count 2, this issue is moot. There is no need to correct the judgment and sentence document for this count.

### 5.

### Excessive Sentence

¶ 42 Barnard claims the total of his consecutively running sentences of life imprisonment and ten years imprisonment is excessive. He bases this claim on the argument that where the offenses of conviction are essentially one act and the sentence for one is life to be served at 85%, the total sentence should shock the conscience of the Court. Because we reverse the conviction on Count 2, this issue is moot.

## DECISION

¶ 43 The Judgment and Sentence of the District Court as to Count 1 is **AFFIRMED.** The Judgment and Sentence as to Count 2 is **REVERSED** and **REMANDED** to the District Court with instruction to **DISMISS.** Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2012), the **MANDATE** is **ORDERED** issued upon delivery and filing of this decision.

LEWIS, V.P.J., LUMPKIN, C. JOHNSON, and SMITH, JJ.: Concur.