**I. R. "Bud" SAULMON, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F-79-32.**

Court of Criminal Appeals of Oklahoma.

July 22, 1980.

D. C. Thomas and James W. Patterson, Oklahoma City, for appellant.

Jan Eric Cartwright, Atty. Gen., William S. Flanagan, Asst. Atty. Gen., Danny K. Shadid, Legal Intern, for appellee.

## OPINION

CORNISH, Presiding Judge:

The appellant was convicted of Embezzlement by Trustee, After Former Conviction of a Felony, in the District Court of Oklahoma County, Case No. CRF–77–4476. A six and one-half (6½) year sentence was imposed.

The conviction stems from the appellant's initial withdrawal of $5,000.00 from the savings account of an 80-year-old lady, Grace Stephenson. She had executed a power of attorney agreement with the appellant, who claimed to be her great-nephew. They became acquainted through his employment with an area-wide aging agency. Both he and Ms. Stephenson testified that they considered this transaction to be a loan.

The evidence reflects that the appellant used a portion of the money to purchase a pickup truck, and that he had a check made out to Ms. Stephenson, endorsed by her and also by him showing his power of attorney,

for the remaining $1,400.00, which he cashed. An arrangement was worked out whereby the appellant purchased groceries for Ms. Stephenson, and she signed the checks. One month's grocery check was $482.51. When questioned about these expenditures by persons associated with the area-wide aging agency, the appellant disclaimed responsibility. Following several similar incidents involving the appellant's use of Ms. Stephenson's funds, she was advised by an attorney and the aging agency in contacting the bank and revoking the power of attorney.

Following the revocation of the power of attorney, an attempted withdrawal by the appellant on December 13, 1977, of the remainder of the balance in Ms. Stephenson's account—some $5,319.69—was unsuccessful. His arrest followed that incident.

I

In his first two propositions of error the appellant complains that (1) there was a fatal variance between the information and the proof; and (2) that the trial court erred in its instructions to the jury. The information reflects the charge as "Embezzlement by a Trustee—21 O.S.1971, § 1455." That statute, defining "Embezzlement by a Bailee," expressly mentions persons who have a power of attorney and misuse it. It is the appellant's position that it was error to charge him with "Embezzlement by a Trustee," and then prove "Embezzlement by a Bailee." Further, he complains that after the State proved "Embezzlement by a Bailee" the trial court improperly instructed on "Embezzlement by a Trustee."

After a careful reading of the record this Court finds no merit to the appellant's claim. Close scrutiny of Section 1454 reflects the statute relates to "Property taken under claim of title" as distinguished from a bailment.[1] In this case there is no ambiguity in the allegations of fact. The

State clearly pled and proved that the appellant was a trustee of property belonging to another and that he violated that trust by converting certain monies to his own use and benefit. We, therefore, regard the descriptive label to Section 1455 as a clerical error and not a fatal variance between the charge and the proof, because it is clear from the allegations of fact what crime is being charged. See *Curtis v. State*, 86 Okl.Cr. 332, 193 P.2d 309 (1948); *Banks v. State*, Okl.Cr., 578 P.2d 370 (1978). Having determined there was no variance between the charge and the proof, we find that the instructions given by the trial court were proper.

II

Next contested is whether the trial court properly admitted evidence of the appellant's attempt to withdraw $5,319.69 from Ms. Stephenson's account on December 13, 1977. This incident occurred some two weeks after the date of the principal charge. He argues the incident was too remote, and submits *Worchester v. State*, Okl.Cr., 536 P.2d 995 (1975), for the general rule that one is to be convicted, if at all, by evidence which shows his guilt for the offense charged alone and forbids the introduction of evidence of other crimes.

On the other hand, there are five generally recognized exceptions to this rule to establish: (1) motive, (2) intent, (3) absence of mistake or accident, (4) identity, or (5) a common scheme or plan which embraces the commission of two or more crimes so related to each other that proof of one tends to establish the other. *Atnip v. State*, Okl.Cr., 564 P.2d 660 (1977).

The questioned evidence was admitted by the trial court to show the appellant's intent to embezzle funds. In considering admissibility of similar evidence this Court in *Bewley v. State*, Okl.Cr., 404 P.2d 39 (1965), cited with approval *Fitzger-*

---

1. A bailee does not take property under a claim of title when held as a bailment because the power of attorney referred to in 21 O.S.1971, § 1455, is not "under claim of title." It appears to be a very limited power. Thus, "Embezzle-

ment by bailee" would not have been the proper charge under the facts presented because the appellant had an absolute power of attorney to expend Ms. Stephenson's funds in any way he chose.

*ald 'v. State*, 85 Okl.Cr. 376, 188 P.2d 396 (1947):

" 'The difficulty concerning this type of evidence does not lie in the understanding of the rule, but in the application thereof.

. . .

" 'It further appears that in the application of the exceptions to the rule greater latitude is allowed in the admissibility of this class of evidence in some types of crime which by their peculiar nature involve the question of intent, guilty knowledge and scheme and plan such as embezzlement, . . . .' " (Citations omitted.)

We think there was a visible connection between these incidents and that evidence of the December 13th incident is both related in time (two weeks later) and circumstances to the offense charged as to have substantial probative value of the appellant's intent to embezzle, particularly in light of the appellant's claim that the transaction was merely a loan. The trial court, therefore, did not err in admitting this evidence.[2]

### III

In cross-examining the appellant, the State elicited testimony concerning the appellant's nine-year-old conviction for impersonating a medical doctor. His attorney objected on two grounds: (1) remoteness and (2) because the conviction did not involve a felony of moral turpitude.

This case was tried prior to the effective date of the Oklahoma Evidence Code, October 1, 1978. The law in effect at the time of trial required that a witness could be questioned for impeachment purposes only as to those convictions which were felonies or misdemeanors involving moral turpitude. See *Bunn v. State*, Okl.Cr., 561 P.2d 969 (1977), and *Price v. State*, Okl.Cr., 546 P.2d

632 (1976), in which this Court held driving under the influence of intoxicating liquor and petty larceny, respectively, were crimes involving moral turpitude.

■ While no precise test for determining moral turpitude has been formulated, it has been held in *Bancroft v. Board of Governors, etc.*, 202 Okl. 108, 210 P.2d 666 (1949), that:

"[M]oral turpitude is 'anything done contrary to justice, honesty, modesty, or good morals.' [*In re Williams*, 64 Okl. 316, 167 P. 1149 (1917)] That particular case was one involving criminal conspiracy. This statement is found in 58 C.J.S. Moral, page 1206: 'Embezzlement, forgery, robbery, and swindling are crimes which denote moral turpitude'; and, as a general rule, all crimes of which fraud is an element are looked on as involving moral turpitude. Thus, concealing assets in bankruptcy, obtaining goods on false representations, and other crimes involving fraud are usually regarded as showing moral turpitude."

Because the crime of impersonating a medical doctor involves deceit and misrepresentation it would appear to be encompassed by the definitions previously announced by the Oklahoma Supreme Court as involving moral turpitude. Moreover, it is well settled that the State may cross-examine a defendant as to any matter and issue which affects his credibility. The extent of such examination is left largely to the discretion of the trial court. Absent an abuse of discretion we will not disturb that ruling.[3]

Turning now to the question of the remoteness of the conviction, the law prior to the adoption of the Oklahoma Evidence Code[4] contained no time limitation except the vague test of "remoteness." See Whinery, Manual on Evidence, c. VI, Part F, § 3,

---

**2.** For a thorough discussion see Annotation, "Admissibility of Evidence of Subsequent Criminal Offenses as Affected by Proximity as to Time and Place," 92 A.L.R.3d 545 (1979).

**3.** See *Dennis v. State*, Okl.Cr., 561 P.2d 88 (1977); *Withers v. State*, Okl.Cr., 507 P.2d 552 (1973).

**4.** The applicable provision of the Oklahoma Evidence Code, 12 O.S.Supp.1978, § 2609, places a ten year limit on the use of the conviction, either from the date of the conviction or release of the witness from confinement imposed for that conviction, whichever is later. This is substantially the same as the federal rule.

p. 84.  We conclude there was no abuse of discretion by the trial court.

Based on the foregoing discussion, the judgment and sentence is *AFFIRMED*.

BRETT and BUSSEY, JJ., concur.