2016 OK CR 29

**Charlie TUCKER, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**Case Number: F-2015-472**

Court of Criminal Appeals of Oklahoma.

Decided: 12/21/2016

ATTORNEYS AT TRIAL, KEVIN FIN-LAY, KRISTI M. GUNDY, 303 SOUTH PE-TERS, NORMAN, OK 73069, COUNSEL FOR DEFENDANT

ZACHARY SIMMONS, DANE TOW-ERY, ASSISTANT DISTRICT ATTOR-NEYS, 201 SOUTH JONES, NORMAN, OK 73069, COUNSEL FOR THE STATE

ATTORNEYS ON APPEAL, CINDY BROWN DANNER, P.O. BOX 926, NOR-MAN, OK 73070, COUNSEL FOR APPEL-LANT

E. SCOTT PRUITT, ATTORNEY GEN-ERAL OF OKLAHOMA, DONALD D. SELF, ASSISTANT ATTORNEY GENER-AL, 313 NE 21ST STREET, OKLAHOMA CITY, OK 73105, COUNSEL FOR APPEL-LEE

## OPINION

SMITH, PRESIDING JUDGE:

¶1 Charlie Tucker was tried by jury and convicted of Count I, Assault and Battery with a Deadly Weapon in violation of 21 O.S.2011, § 652, and Count III, Obstructing an Officer (misdemeanor) in violation of 21 O.S.2011, § 540, all after former conviction of a felony, in the District Court of Cleveland County, Case No. CF–2012–2223.[1] In accordance with the jury's recommendation the Honorable Tracy Schumacher sentenced Tucker to ten (10) years imprisonment (Count I) and thirty (30) days in jail (Count III), to run concurrently. Tucker must serve 85% of his sentence on Count I before being eligible for parole consideration. Tucker appeals from these convictions and sentences.

¶2 Tucker raises three propositions of error in support of his appeal:

I. The State improperly used a stale prior conviction to enhance Mr. Tucker's sentence.

II. Mr. Tucker failed to receive the effective assistance of counsel regarding his status as a habitual offender, resulting in

---

1. Tucker was acquitted of Count II, Assault and Battery with a Deadly Weapon. Tucker had originally entered a blind plea to the charges, but was allowed to withdraw that plea at the sentencing hearing. Subsequently the case was remanded for further preliminary hearing and a second page, alleging a prior conviction, was added to the Information.

the State's improper use of a prior conviction to enhance his sentence.

III.   Because the trial court's instructions improperly allowed a conviction for assault and battery with a deadly weapon without requiring proof of an intent to kill, the judgment against Mr. Tucker must be modified.

¶3 After thorough consideration of the entire record before us, including the original record, transcripts, exhibits and briefs, we affirm Tucker's conviction. We remand the case for resentencing on Count I.

¶4 We find in Proposition I that there is a high probability that the prior conviction used to enhance Tucker's sentence was stale. The enhanced sentence was based on one prior conviction. The range of punishment for his crime, as charged, was ten years to life imprisonment. 21 O.S.2011, § 652(C); 21 O.S. 2011, § 51.1(A)(1). There is no minimum sentence for assault and battery with a deadly weapon as a first offense. 21 O.S.2011, § 652(C). A sentence may be enhanced with a prior conviction if the current offense is committed within ten years following completion of execution of the previous sentence. 21 O.S.2011, § 51.1(A). That ten-year period may be prolonged if, between completion of the sentence on the former conviction and the current offense, a person was convicted of a misdemeanor involving moral turpitude. 21 O.S.2011, § 51.2. Tucker received the minimum sentence for assault and battery with a deadly weapon with one prior conviction, ten years.

¶5 The State's argument turns on (a) whether ten years had passed between Tucker's last conviction and his current conviction and (b) whether Tucker's 2010 misdemeanor conviction for domestic abuse satisfies Oklahoma's statute providing for sentence enhancement when a conviction involves a crime of moral turpitude.

¶6 Tucker admitted that he had a prior Mississippi conviction for accessory after the fact to armed robbery. Tucker originally pled in Warren County Circuit Court,

Mississippi, in 1999, on a non-adjudication order; had he successfully completed 36 months of supervised probation, the case would have been dismissed. However, Tucker was not successful, his non-adjudicated sentence was revoked, and on January 12, 2001, he received a 5-year sentence in Mississippi, suspended upon successful completion of the Restitution Center. The record supports Tucker's claim that this sentence was completed and discharged on January 29, 2002, more than ten years before the current offense. The burden is on the defendant to show that the sentence of a former conviction has been satisfied for more than ten years and thus cannot support a sentence enhancement under § 51.2. *Goodwin v. State*, 1986 OK CR 180, ¶8, 730 P.2d 1202, 1204. Tucker bases this claim on two Mississippi documents. The first, from the Mississippi Department of Corrections, is titled "Petition for Termination of Probation", and filed in Warren County, Mississippi on January 29th, 2002. This document notes that Tucker was placed in the Restitution Center, was released from that Center on March 30, 2001 and returned to probation, and had no further probation violations. The document asks the Warren County Circuit Court to discharge Tucker's probation. The second, from the Warren County Circuit Court, is titled "Discharge Order" and states that Tucker's probation is terminated.

¶7 The Mississippi statutory chapter dealing with probation and parole, in a subsequent section, states that after discharge from probation by the court of original jurisdiction, the probationer may have civil rights restored by the Governor. Miss Code Ann. § 47-7-41. This certainly suggests that the Discharge Order operated as a completion of execution of Tucker's sentence in that case.[2] The State notes that the Mississippi Supreme Court has held that, while statute limits supervised probation to five years, a suspended sentence may include "'unsupervised' post-release supervision". *Johnson v. State*, 925 So.2d 86, 102 (¶29) (Miss. 2006).

---

2.   Oklahoma law has a similar provision; we have held a sentence is completed when the Department of Corrections determines the sentence has been satisfied and the defendant is uncondition-

ally released, rather than on the calendar date representing the maximum time a defendant might be held in custody on the sentence. *Nipps v. State*, 1978 OK CR 30, ¶6, 576 P.2d 310, 312.

However, *Johnson* does not, as the State suggests, allow this Court to assume that the remainder of Tucker's sentence continued as unsupervised probation until the five years ran. In *Johnson*, the defendant had eight years suspended, with five of those years on supervised probation. As the *Johnson* Court explained, Mississippi statutes provide for suspended sentence, supervised probation (not to exceed five years), and post-release supervision; that opinion was the Court's attempt to clarify the relationship among those statutory provisions. *Id.* at 91 (¶ 6). That Court held that a trial court may both suspend a sentence in whole or in part, and sentence a defendant to a period of post-release supervision; if the latter extends past the five-year statutory maximum, any time over that period becomes "unsupervised post-release supervision". *Id.* at 102 (¶ 29). The opinion *does not* say that an order which does not mention post-release supervision at all can be said to include post-release supervision. Here, the Circuit Court order states that Tucker's probation is terminated. That is all it says. Reading that order in conjunction with Mississippi § 47-7-41, and the discussion in *Johnson*, this Court cannot conclude with any certainty that Tucker's five-year suspended sentence did not completely discharge on January 29, 2002.

■ ¶ 8 If Tucker's Mississippi sentence completely discharged in January 2002, it is outside the ten-year limit for enhancement, should not have been used, and Tucker should not have been convicted after a former conviction. However, the State argues that the ten-year period was prolonged by Tucker's conviction for misdemeanor domestic abuse in Cleveland County, in case number CM-2010-2139. 21 O.S.2011, § 51.2. The State asserts that domestic abuse is a crime of moral turpitude. Tucker argues that domestic abuse is merely a kind of assault and battery, which is not a crime of moral turpitude. *Winfield v. State*, 1920 OK CR 148, 18 Okla.Crim. 257, 268, 191 P. 609, 612. The State contends that *Winfield* is limited to the context of impeachment, and claims that this holding does not apply to sentence enhancement under § 51.2. This alleged distinction is not borne out by the State's cited cases.

¶ 9 The law does not support the State's claim that domestic violence is a crime of moral turpitude. This Court, citing the Oklahoma Supreme Court, accepted a definition of moral turpitude as "anything done contrary to justice, honesty, modesty, or good morals." *Saulmon v. State*, 1980 OK CR 58, ¶ 12, 614 P.2d 83, 86. *Saulmon* appears to limit this broad language in the initial sentence by describing crimes of moral turpitude as including embezzlement, forgery, robbery, swindling, and "all crimes of which fraud is an element." *Id.* The State relies on *Saulmon's* initial broad language, as well as that in *Bunn v. State*, 1977 OK CR 52, ¶ 6, 561 P.2d 969, 971. There, we held that driving under the influence was a crime of moral turpitude because it is inherently dangerous to the public, and "shows a lack of personal integrity and a lack of concern for and respect of the person of others and their property." *Id.* ¶ 7, 561 P.2d at 972. Neither the crime in *Saulmon* nor that in *Bunn* is comparable to domestic assault and battery. However, those cases define "moral turpitude" similarly to what the State urges us to adopt here. That definition is arguably broad enough to encompass virtually any crime— surely not what the Legislature intended by using the phrase in the very specific statutory context of § 51.2.

¶ 10 The State also relies on an unpublished summary opinion finding that Malicious Intimidation because of Race (a crime very different from domestic assault and battery) is a crime of moral turpitude in the § 51.2 context. *Silmon v. State*, F–2011–894, slip op. at 2 (Okl.Cr. Jan. 4, 2013) (not for publication). In *Silmon* this Court cited the *Saulmon* definition of moral turpitude as something contrary to justice and good morals, showing a lack of personal integrity, and a lack of concern and respect for others (omitting the specific language about fraud, etc.). *Id.* at 2–3. *Silmon* relied, in its turn, on *Bunn* and other impeachment cases involving moral turpitude.[3] One of these is *Price v.*

---

**3.** Although *Silmon* cites *Collins v. State*, 2009 OK CR 32, 223 P.3d 1014, as defining moral turpitude, that case actually does not expressly or implicitly define that term. Rather, the opinion

*State*, a published case in which we applied an Eighth Circuit definition which restricted moral turpitude to "the gravest offenses—felonies, infamous crimes, those that are *malum in se*", including crimes of theft, and thus show a defendant is inherently of depraved mind and unworthy of belief. *Price v. State*, 1976 OK CR 22, ¶ 12, 546 P.2d 632, 638. *Malum in se* refers to crimes which are wrongs in themselves, inherently immoral, such as murder, arson or rape. *Black's Law Dictionary* 978 (8th Ed. 2004). The *Price* definition comes much closer to the spirit of traditional usage. "Moral turpitude" usually invokes crimes involving lying or deceit (fraud, theft, embezzlement, bribery), or actual moral offenses (incest, murder). *Black's* defines "moral turpitude" as conduct contrary to justice, honesty, or morality; it encompasses departures from ordinary standards of honesty, good morals, justice or ethics, as to shock the moral sense of the community; it includes conduct that is base, vile, or depraved. *Black's Law Dictionary* 1031 (8th Ed. 2004). More concisely, *Black's* free online service defines the term as one "applied to an offense or a crime that is illegal but also shows a person's baseness and depravity." *Black's Free Online Legal Dictionary 2nd Ed.*, thelawdictionary.org/letter/m/page/87/.

■ ¶ 11 Misdemeanor domestic assault and battery would not fit within traditional definitions or the *Price* standard. Essentially, domestic assault and battery is a crime of violence against the person—like assault and battery. It is difficult to characterize domestic violence as a *malum in se* crime, or one recognized as inherently evil and immoral, given that for centuries it was not recognized as a crime at all, and only recently has our Legislature granted it felony status. In fact, the only compelling (implied) reason the State offers to make domestic violence a crime of moral turpitude is to remove any question, in this case, as to the validity of Tucker's enhanced conviction. That is simply

not a good enough reason to expand the definition of "moral turpitude" and to separate domestic assault and battery from the well-settled law that assault and battery is not a crime of moral turpitude.[4] We find that domestic assault and battery is not a crime of moral turpitude, and ten years had elapsed between Tucker's Mississippi conviction and the current charges. If Tucker's prior conviction was stale, the ten-year period was not prolonged by Tucker's subsequent misdemeanor conviction. We reject the State's argument that any irregularity in the timing of the Mississippi conviction was cured by Tucker's subsequent conviction. Furthermore, we must review Tucker's claims of ineffective assistance in Proposition II with the understanding that, if the Mississippi conviction were stale, the error would have significant consequences for Tucker's sentence. Given the ambiguity surrounding the Mississippi conviction, we are unable to further resolve the issue raised in Proposition I.

■ ¶ 12 We find in Proposition II that trial counsel was ineffective for failing to discover and demonstrate the possibility that Tucker's prior conviction from Mississippi was too old to use for sentencing enhancement. Tucker was represented at trial by Mr. Finlay (first chair) and Ms. Gundy (second chair). Gundy had represented Tucker since preliminary hearing, while Finlay was called in to conduct the trial. Tucker must show that counsel's performance was deficient, and that the deficient performance was prejudicial. *Miller v. State*, 2013 OK CR 11, ¶ 145, 313 P.3d 934, 982; *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003); *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Counsel's acts or omissions must have been so serious as to deprive Tucker of a fair trial with reliable results. *Harrington v. Richter*, 562 U.S. 86, 104, 131 S.Ct. 770, 787–88, 178 L.Ed.2d 624 (2011). Tucker must show he was prejudiced by counsel's acts or omissions. *Williams v. Tay-*

---

refers to dishonesty or false statement only as that language appears in 12 O.S.2011, § 2609(A)(2), allowing impeachment of a witness. *Collins*, ¶ 23, 223 P.3d at 1019.

**4.** In its findings and conclusions, the trial court explicitly found that domestic assault and battery is not a crime of moral turpitude. Findings & Conclusions at 4 n.2, O.R. 357. This finding is supported by the law.

*lor*, 529 U.S. 362, 394, 120 S.Ct. 1495, 1513–14, 146 L.Ed.2d 389 (2000); *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067. Where a defendant fails to show prejudice, we will dispose of a claim of ineffective assistance on that ground. *Marshall v. State*, 2010 OK CR 8, ¶ 61, 232 P.3d 467, 481. At sentencing, the trial court stated its belief that, but for his prior conviction, jurors "clearly" would have given Tucker a sentence of less than ten years. As it was, jurors acquitted Tucker of one felony and gave him the minimum sentence on the other.

¶ 13 In connection with this claim of ineffective assistance of counsel, we remanded the case for an evidentiary hearing on July 5, 2016. Rule 3.11(B), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2016). We directed the trial court to answer four questions: (1) did trial counsel investigate the circumstances surrounding Tucker's prior conviction, including his sentence; (2) was trial counsel aware that there might be some discrepancy regarding when Tucker's sentence for his prior Mississippi conviction was completed; (3) was trial counsel aware of these documents, through either Tucker, counsel's investigation, or discovery; (4) if trial counsel was aware of the documents did counsel make a strategic decision not to use them and raise the issue of completion of the prior sentence. The hearing was held on August 3, 2016. Each party submitted proposed findings and conclusions to the trial court, and the trial court completed its findings of fact and conclusions of law on September 6, 2016. Both parties subsequently filed supplemental briefs based on those findings and conclusions.

¶ 14 The trial court first made findings regarding the four questions above. The trial court found (a) that trial counsel attempted to investigate the circumstances surrounding Tucker's Mississippi conviction; (b) that trial counsel were not aware of any information calling into question the date Tucker's sentence on the Mississippi conviction was completed; (c) that trial counsel were not aware of the documents showing that Tucker's conviction might be stale; and (d) that, had Finlay and Gundy known Tucker's conviction was potentially stale, they would have used that knowledge to prohibit his sentence enhancement, and would have no strategic reason not to do so.

·¶ 15 The trial court also reached several conclusions of law, making no findings or conclusions as to whether trial counsel's conduct was or was not ineffective. (Conclusions 1-3). The court noted that to be sentenced as a second and subsequent offender, if ten years have passed since completion of the sentence for a prior felony, the defendant must meanwhile have been convicted of a felony or misdemeanor involving moral turpitude (21 O.S.2011, § 51.2); the court further found the State had not presented evidence of such an intervening conviction, specifically finding that domestic assault and battery was not a crime of moral turpitude. (Conclusion 4). The trial court found that, if the Mississippi sentence was completed more than ten years before December 7, 2012, it could not be used to enhance Tucker's sentence, and that "completion" occurred when the Department of Corrections relinquishes control of and unconditionally releases a defendant. (Conclusion 5).

¶ 16 In Conclusion 6, the trial court discussed the effect of the uncertainty surrounding the Mississippi conviction. The court first noted that, where the prosecution seeks to enhance punishment for a second or subsequent offense, the State must prove the prior conviction beyond a reasonable doubt. The court noted:

> The state presented no evidence that Mr. Tucker had any further liability or obligation in the criminal case other than by the documents entered into evidence by the State. The documents provided by the Defense on appeal do raise a question which cannot be answered by either party at this time.

The trial court noted that, had the issue of the time discrepancy been raised at trial, it could have been resolved and, if the conviction was stale, the trial court would have instructed on a different range of punishment.

¶ 17 In Conclusion 7, the trial court returned to the burden of proof. The court found that, while the defendant has the burden to provide some evidence that a prior

conviction is stale, the State still has the burden to prove it is not stale.

¶ 18 Finally, in Conclusion 8, the trial court found that Tucker satisfied his burden to provide "evidence which arguably indicates that his Mississippi conviction" was stale, as the discharge order from Mississippi "plainly states 'the probation of the aforesaid is hereby terminated.'" The court concluded, "Based on the evidence before the court, the Court would not have permitted the trial to proceed to a second stage without the issue being resolved."

¶ 19 This Court has before it the entire record in the Mississippi case, including the document titled "Discharge Order" and dated January 29, 2002. The most reasonable interpretation of the Mississippi statutes and case law taken together, and compared with corresponding Oklahoma law, strongly suggest that Tucker completed his sentence on January 29, 2002. Tucker has no intervening conviction for a felony or misdemeanor involving moral turpitude. The record strongly suggests that Tucker's sentence was improperly enhanced with a stale conviction. The trial court clearly was troubled by this possibility, concluding that, had the discharge document been produced at trial, it would not have allowed the case to proceed until the issue was resolved. The trial court also found that, had it been determined at trial that Tucker's Mississippi sentence was complete on January 29, 2002, the court would have instructed on a different range of punishment.

■ ¶ 20 The trial court found that counsel tried to investigate the Mississippi case, that counsel did not know about the discharge documents, and that counsel had no strategic reason not to use them had they been available. The trial court also set forth the *Strickland* standard for ineffective assistance. The trial court did not find that trial counsel's investigation was adequate, and did not find that counsel was not ineffective. Instead, the court emphasized the troubling

ambiguity surrounding the prior conviction and said that it would not have allowed the case to proceed until that issue was resolved. Trial counsel's duty is to conduct a thorough investigation of a defendant's background, as it is relevant to the issues in the trial. *Wiggins*, 539 U.S. at 521–22, 123 S.Ct. at 2535–36; *Williams*, 529 U.S. at 396, 120 S.Ct. at 1515. Where the issue is capital mitigation, counsel must exercise reasonable professional judgment and diligently investigate a defendant's criminal, psychological and personal history. *Rompilla v. Beard*, 545 U.S. 374, 383–84, 125 S.Ct. 2456, 2463–64, 162 L.Ed.2d 360 (2005); *Wiggins*, 539 U.S. at 522–23, 123 S.Ct. at 2535–36.

■ ¶ 21 Where the issue, as here, is the possibility of a conviction too stale to use to enhance a sentence, trial counsel should diligently attempt to discover all the details of that conviction. *Cf. Rompilla*, 545 U.S. at 383–84, 125 S.Ct. at 2464 (important to examine capital defendant's prior conviction file to counter allegations of history of use or threat of violence). On this record, counsel failed to make that showing. Finlay himself did nothing. Gundy said she telephoned two or possibly three different Mississippi officials. Gundy said she asked them for documents but didn't know whether she received any; other testimony established that she had not. Neither Gundy nor Finlay offered any reason why she would fail to follow up on such a simple, and essential, request.[5] Based on their testimony, Finlay and Gundy would have used the Discharge Order if they had it. This appellate record shows that consulting the full Mississippi record would have raised a serious issue, and that the trial court would have required that issue to be resolved before instructing jurors on the range of punishment. Trial counsel here were deficient— Gundy for failing to follow through, and Finlay for leaving the whole question to Gundy without considering the possibility that the conviction was stale.

5. The record is clear that defense counsel was capable of getting actual information from another Mississippi county. The PSI also showed another Mississippi case, from Bolton County in 2006, with no disposition information available. At sentencing, Gundy told the trial court that she had talked to the Bolton County prosecutor and mayor's office, and determined that case had been dismissed. This makes counsel's failure to follow up in Warren County even less understandable.

¶ 22 The record shows a strong possibility that defense counsel's omissions resulted in prejudice to Tucker. If Tucker's prior conviction was stale, his jury was instructed on the wrong range of punishment. Jurors gave Tucker the minimum sentence on Count I. At sentencing, the trial court stated, "But for your prior, I don't know what they [jurors] would have given you. Clearly, it would have been less than the 10." This may have referred back to an argument defense counsel raised at sentencing. Counsel stated, "Another thing I would like to point out is the jury did come back with a question asking, Could they give him less than 10 on that Count I, which obviously the Court could not answer, nor could he be given that." No jury notes were preserved in the record and there is no transcript record of any notes received from jurors during deliberations. However, the trial court's phrasing suggests that this note was actually submitted (though apparently neither answered nor preserved). On this record, we cannot conclude that, if Tucker did not have a prior conviction, a properly instructed jury would have recommended a sentence of ten years.

¶ 23 This is a frustrating case. Defense counsel's failure to follow up on Tucker's Mississippi conviction has left the substantive sentencing issue in limbo. The most this Court can conclude with certainty is that there is a strong possibility Tucker was improperly charged, that his jury was improperly instructed, and that his sentence would have been different but for counsel's omissions. We can certainly find counsel ineffective for failing to investigate the circumstances surrounding his Mississippi conviction; such investigation could have answered and/or avoided these questions. The trial court's Findings and Conclusions support this conclusion. Where an evidentiary hearing reveals deficient performance which prejudices the defendant, relief is appropriate. *Levering v. State*, 2013 OK CR 19, ¶ 12, 315 P.3d 392, 396 (on remand for evidentiary hearing, trial court found performance was deficient and counsel's failure prejudiced appellant); *cf. United States v. Kissick*, 69 F.3d 1048, 1056–57 (10th Cir. 1995), *abrogated on other grounds by United States v. Horey*, 333 F.3d 1185 (10th Cir. 2003) (failure to in-vestigate circumstances of prior conviction deficient and prejudicial).

¶ 24 Tucker's trial counsel were ineffective for failing to investigate the circumstances surrounding his prior Mississippi conviction. It is highly likely that conviction was stale and should not have been used to enhance his sentence. If so, his jury was improperly instructed on the minimum sentence. The record indicates jurors would have considered a sentence of less than ten years had that option been available. Thanks to counsels' deficient performance, neither this Court nor the trial court can find with certainty that Tucker's conviction was stale. However, counsel were ineffective, and there is a strong possibility that ineffective assistance resulted in a miscarriage of justice. We grant Tucker's request to remand Count I for resentencing. There is no doubt of Tucker's guilt. On remand, this Court expects the parties to address whether the Mississippi conviction may be used to enhance Tucker's sentence; the trial court made it clear in its Conclusions that it would not allow sentencing to proceed without a resolution of the issue. Proposition II is granted, and the case is remanded for resentencing on Count I.

¶ 25 We find in Proposition III that the trial court did not abuse its discretion in instructing the jury. Tucker claims that the trial court should have *sua sponte* instructed jurors that assault and battery with a deadly weapon requires use of deadly force or intent to kill. Instructions are within the discretion of the trial court. *Cipriano v. State*, 2001 OK CR 25, ¶ 14, 32 P.3d 869, 873. An abuse of discretion is any unreasonable or arbitrary action made without proper consideration of the relevant facts and law, also described as a clearly erroneous conclusion and judgment, clearly against the logic and effect of the facts. *Neloms v. State*, 2012 OK CR 7, ¶ 35, 274 P.3d 161, 170. We review this claim for plain error. *Day v. State*, 2013 OK CR 8, ¶ 14, 303 P.3d 291, 298. Plain error is an actual error, that is plain or obvious, and that affects a defendant's substantial rights, affecting the outcome of the trial. *Barnard v. State*, 2012 OK CR 15, ¶ 13, 290 P.3d 759, 764. There is no error here. Intent to kill is

not an element of assault and battery with a deadly weapon. *Goree v. State*, 2007 OK CR 21, ¶ 3, 163 P.3d 583, 584; 21 O.S.2011, § 652(C). It would be error to instruct jurors otherwise. *Goree*, ¶ 5, 163 P.3d at 584-85. We decline Tucker's invitation to revisit this conclusion. Proposition III is denied.

## DECISION

¶ 26 The Judgment of the District Court of Cleveland County is **AFFIRMED**. The Sentence on Count I is **REMANDED** for **RE-SENTENCING**. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2016), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

LUMPKIN, V.P.J.: CONCUR

JOHNSON, J.: CONCUR

LEWIS, J.: CONCUR

HUDSON, J.: CONCUR