# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 56210-3-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| JOHN MONTY DAVIS, | |
| Appellant. | |

PRICE, J. — John M. Davis appeals his conviction for first degree assault while armed with a deadly weapon. Davis argues the trial court abused its discretion by admitting evidence of a prior bad act and that he received ineffective assistance of counsel for his counsel's request to withdraw an instruction for a lesser degree crime of third degree assault. Davis also raises additional issues in a statement of additional grounds. We affirm.

## FACTS

### I. BACKGROUND FACTS

Deanna Tallmon and John Davis began a romantic relationship in 2016. Tallmon and Davis lived together in Tallmon's apartment beginning in 2020.

In early April 2020, Davis allegedly attacked and strangled Tallmon. Davis punched Tallmon in the eye and put his hands around Tallmon's neck, squeezing her neck and yelling, "[D]ie, die, die." 8 Verbatim Report of Proceedings (VRP) (May 6, 2021) at 97. Tallmon ended the relationship after the strangulation, but allowed Davis to remain living in the apartment because she believed Davis had nowhere to go.

About one week later on April 16, Davis visited a housing assistance agency to seek his own housing. After Davis returned from the housing agency, Tallmon described Davis as having a "dark aura" and she felt something was "really wrong." 8 VRP (May 6, 2021) at 107. Tallmon began preparing dinner and asked Davis to go to the store nearby so that she could prepare to leave him while he was gone. When Davis returned from the store, Tallmon was still in the bedroom packing a bag to leave him.

Davis approached Tallmon and began to stab her in the neck with a knife. Davis stabbed her in the neck, eye, shoulder, collar bone, and wrist and yelled, "Die, bitch" throughout the attack. 8 VRP (May 6, 2021) at 119. Tallmon managed to rush out the front door, where neighbors attempted to help her and called 911.

Police arrested Davis at the scene. The State charged Davis with first degree assault. The charge included a weapon enhancement for use of a deadly weapon and special allegations of domestic violence against an intimate partner.

## II. PRETRIAL MOTION

In a pretrial motion, the State sought to admit evidence of the strangulation attack one week prior to the April 16 stabbing under ER 404(b). The State argued the prior strangulation went to Davis' motive and intent, as well as Tallmon's credibility. Davis responded that there was insufficient evidence that the strangulation occurred and the prejudicial nature of the strangulation substantially outweighed its probative value.

In an oral ruling, the trial court admitted the evidence under ER 404(b), explaining,

> The real issue is whether the prejudicial effect outweighs the probative value such that the defendant would not have a fair trial in a case such as this, especially in domestic violence related cases where there are complicated personal relationships.

> The jury often will want to know what the relationship was like aside from the day in question where the defendant's alleged to have stabbed his former girlfriend.
>
> Also, it would appear that with the close proximity to the alleged assault a week prior to the stabbing incident, that it would be very probative over the defendant's intent and motive regarding the alleged assault upon the victim. I do believe that this evidence would be admissible to go to the issue of intent and motive, especially when it's given in close proximity to her desire to end the relationship because she's fearful of the defendant. If this had happened a year before or maybe even six months before, it may not be as probative as it would be if it had occurred the week before. It's almost as if it's res gestae for what was going on with the two of them during that week prior to the alleged stabbing incident.
>
> So I do find by a preponderance of the evidence that the prior incident did, in fact, occur. I do find that it would be admissible to go to intent and motive. . . .

6 VRP (May 3, 2021) at 15-16.

### III. THE TRIAL

Tallmon testified at trial consistent with the above facts, including identifying the bloody knife found in her apartment as belonging to Davis. Tallmon admitted that she initially told an officer at the scene that someone else other than Davis had attacked her. Tallmon explained she lied to the officer to protect Davis.

Davis also testified. As for the alleged strangulation one week before the April 16 stabbing, Davis testified that he did not attack Tallmon, but instead that he had helped her while she was having what he believed to be a seizure. While their relationship had changed after this incident, Davis denied that they had broken up.

Davis also denied stabbing Tallmon. He testified that he believed someone had been threatening Tallmon before the stabbing. He stated that when he returned to the apartment after going to the store, he heard moaning. When he entered the apartment, he noticed there was blood in the kitchen. He then saw Tallmon holding her neck as she came out of the bedroom. He did

3

not notice that she had been stabbed, but that she had blood all over her. Believing she was having another seizure, Davis "tapped" her face in an attempt to wake her up. 13 VRP (May 17, 2021) at 701.

Davis then said that after Tallmon had left the apartment and the neighbors were helping her, Davis went to the back of the apartment to check the bedroom window and found the screen had been tampered with, although it did not appear anyone had entered through the window. Davis testified on cross-examination he never saw anyone else in the apartment.

Police Officer Genis testified about his initial interview with Tallmon, during which she did not accuse Davis of the attack. When Officer Genis contacted Tallmon at the hospital, she claimed she was stabbed from behind and she did not know who stabbed her. But Officer Genis testified it appeared that all her stab wounds were "frontal injuries" as if "she was trying to fend off somebody." 9 VRP (May 10, 2021) at 320.

The on-call trauma surgeon testified that, on the night of the stabbing, he performed surgery on Tallmon and noted her extensive injuries, including stab wounds likely inflicted by a knife. He explained one of the stab wounds hit an artery, causing a potentially life-threatening blood clot that required immediate surgery. He further explained Tallmon suffered a fracture to her left eye socket that was likely due to blunt injury, not from a knife blade. He testified that the left eye injury required "a lot of force" to fracture, and therefore, it was unlikely the injury was a result of someone helping Tallmon and more consistent with a fist strike or blunt edge of a knife. 9 VRP (May 10, 2021) at 250.

4

IV. JURY INSTRUCTIONS

Before closing arguments, Davis sought jury instructions for lesser degree offenses of second degree and third degree assault. Davis proposed a pattern third degree assault instruction that stated, "A person commits the crime of assault in the third degree when he or she with criminal negligence, causes bodily harm to another person by means of a weapon or other instrument or thing likely to produce bodily harm." Clerk's Papers at 134.

The trial court allowed both the second and third degree assault lesser degree offense instructions, stating case law generally allowed lesser degree offenses "if the defense presented some testimony as to what may have occurred caused the injury." 14 VRP (May 18, 2021) at 735. The trial court stated Davis had presented some evidence that Davis was not the one who stabbed Tallmon and Davis could have caused the damage to her eye socket when he slapped her to wake her up from the seizure.

Defense counsel then said she realized she had submitted a third degree assault instruction that required the use of a weapon or instrument, and asked, instead, for the trial court to use a third degree assault instruction with the alternate basis of causing "substantial pain by extent of a period sufficient to cause considerable suffering." 14 VRP (May 18, 2021) at 739-40. Defense counsel explained:

> So, Your Honor, in looking at Assault 3 again, and in light of the Court's comment, I would like to withdraw that instruction that I presented and substitute it with -- and I'm looking at [WASHINGTON PATTERN JURY INSTRUCTION (WPIC)] 35.20 with the paragraph that indicates that a person commits a crime of assault in the third degree when he or she, with criminal negligence, causes bodily harm accompanied by substantial pain by extent of a period sufficient to cause considerable suffering. I think that's what I meant to do originally because, again, the issue of the knife is covered in Assault 1 and Assault 2. And I want to give the jury an option, since Mr. Davis's defense is that he didn't do it.

> So, I think that was just a mistake on my part, and so I would like to withdraw the instruction I proposed and substitute it with that one. It's the same instruction, it's just a different paragraph. So, it would be striking on my instruction "physical injury caused by a weapon or other instrument" and substituting it with "causes bodily harm," etc.

14 VRP (May 18, 2021) at 740. The trial court denied the modification and allowed the third degree assault instruction only as originally proposed, appearing to agree with the State's argument that even if slapping someone awake could be third degree assault, the fracture of Tallmon's eye socket could not be caused by a mere slap.

At that point, defense counsel sought to withdraw both the second degree and third degree instructions:

> [B]ecause, again, the defense here is that he didn't do it at all. And so even, you know, presenting it with a deadly weapon as Assault 3, that cuts across his defense as well. And really, I presented them as, you know, a package. You know, especially given the circumstances that, you know, Assault 2 is a strike as well.

14 VRP (May 18, 2021) at 742. Based on defense counsel's request, the trial court withdrew the third degree assault instruction, but still gave the instruction for the lesser degree offense of second degree assault because, according to the trial court, Davis presented evidence that he may have acted recklessly given his "dark aura" that day. 14 VRP (May 18, 2021) at 743.

## V. VERDICT AND SENTENCING

The jury found Davis guilty of assault in the first degree against Tallmon, with special verdict findings of armed with a deadly weapon and crime committed against an intimate partner.[1] The trial court determined that Davis had two prior convictions for most serious offences under

---

[1] The special verdict form for the weapon enhancement was read on the record and included in the judgment and sentence but does not appear in the clerk's papers provided.

the Persistent Offender Accountability Act (POAA).[2]  Therefore, because the conviction for first degree assault was Davis' third most serious offense, the trial court sentenced Davis to life without the possibility of early release.

Davis appeals.

## ANALYSIS

### I.  ADMISSIBILITY OF PRIOR BAD ACTS

Davis argues the trial court abused its discretion when it failed to conduct a complete ER 404(b) analysis on the record for the strangulation that occurred one week before the April 16 stabbing.  Davis further argues the prejudicial nature of the evidence outweighed its probative value.  We disagree.

#### A. LEGAL PRINCIPLES

We review an interpretation of ER 404(b) de novo.  *State v. Fisher*, 165 Wn.2d 727, 745, 202 P.3d 937 (2009).  If the trial court interprets the rule correctly, we review the decision of a trial court to admit evidence for abuse of discretion.  *Id.*  " '[T]here is an abuse of discretion when the trial court's decision is manifestly unreasonable or based upon untenable grounds or reasons . . . .' "  *State v. Gunderson*, 181 Wn.2d 916, 922, 337 P.3d 1090 (2014) (quoting *State v. Brown*, 132 Wn.2d 529, 572, 940 P.2d 546 (1997)).

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  ER 404(b).  ER 404(b) bars evidence of a person's character to show that person acted in conformity with that character in the current

---

[2] Ch. 9.94A RCW.

instance. *State v. Gresham*, 173 Wn.2d 405, 420, 269 P.3d 207 (2012). But that same character evidence may be admitted for another purpose, such as motive or intent. *Id.*

Before admitting ER 404(b) evidence, a trial court must, on the record, " '(1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect.' " *State v. Foxhoven*, 161 Wn.2d 168, 175, 163 P.3d 786 (2007) (quoting *State v. Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002)). ER 404(b) must be read in conjunction with ER 403, which " 'requires exclusion of evidence, *even if relevant*, if its probative value is substantially outweighed by the danger of unfair prejudice.' " *State v. Olsen*, 175 Wn. App. 269, 280, 309 P.3d 518 (2013) (quoting *State v. Smith*, 106 Wn.2d 772, 776, 725 P.2d 951 (1986)), *aff'd on other grounds*, 180 Wn.2d 468, 325 P.3d 187 (2014); ER 403.

Even if the trial court did not make its findings on the record, this failure to undertake the balancing is not reversible error if the record as a whole allows us to determine the admissibility of the evidence. *State v. Gogolin*, 45 Wn. App. 640, 645, 727 P.2d 683 (1986); *State v. Carleton*, 82 Wn. App. 680, 686, 919 P.2d 128 (1996). In addition, if the admission of the evidence is determined to be error, it is only reversible if " 'the outcome of the trial would have been different if the error had not occurred.' " *Carleton*, 82 Wn. App. at 686-87 (quoting *State v. Jackson*, 102 Wn.2d 689, 695, 689 P.2d 76 (1984)).

Under ER 404(b), " 'evidence of quarrels between the victim and the defendant preceding a crime, and evidence of threats by the defendant, are probative upon the question of the defendant's intent.' " *State v. Powell*, 126 Wn.2d 244, 261, 893 P.2d 615 (1995) (quoting *State v.*

*Parr*, 93 Wn.2d 95, 102, 606 P.2d 263 (1980)). Additionally, testimony of past assaults by the defendant can be admissible to show motive. *Powell*, 126 Wn.2d at 260-61 (the court determines when evidence of past assaults was "of consequence" to the action, such as when it establishes a hostile relationship between defendant and victim, its admission under ER 404(b) was not error).

B. APPLICATION

Davis argues the trial court did not make ER 404(b) findings on the record as required. Specifically, he argues the trial court failed to weigh the unfair prejudice with the probative value.[3] The State responds that the trial court did, in fact, make the required findings on the record.

A review of the trial court's oral 404(b) ruling shows that it concluded its remarks with its determination that by a preponderance of the evidence, the strangulation incident occurred and that the incident was admissible as to intent and motive. The trial court did not finish its analysis, as is perhaps typical, with the required balancing of prejudice and probative value.

However, even if the trial court did not overtly *conclude* its 404(b) decision with an ER 403 balancing, the trial court clearly couched its decision overall with a balancing of prejudice and probative value. The trial court said,

> The real issue is whether the prejudicial effect outweighs the probative value such that the defendant would not have a fair trial in a case such as this . . . .
>
> . . . [I]t would appear that with the close proximity to the alleged assault a week prior to the stabbing incident, that it would be very probative over the defendant's intent and motive regarding the alleged assault upon the victim. . . . If this had happened a year before or maybe even six months before, it may not be as probative as it would be if it had occurred the week before.

---

[3] Davis does not challenge the trial court's oral ruling that the misconduct occurred by a preponderance of the evidence, that identified the purpose for the evidence, and that the evidence was relevant (prongs (1)-(3)). Therefore, these findings are treated as verities on appeal. *Olsen*, 175 Wn. App. at 281.

6 VRP (May 3, 2021) 15-16. The trial court carefully weighed the prejudicial value of the past strangulation, even noting a longer proximity in time could have switched the analysis towards a prejudicial determination. Notwithstanding that the trial court arguably addressed the 404(b) factors nonsequentially and out of the typical order, the trial court in fact made all four findings on the record. Accordingly, Davis' argument fails.

Nor was the trial court's ultimate conclusion error. The record as a whole allows us to determine that the probative value of the past strangulation attack outweighs its prejudicial nature, especially given the close temporal proximity of the two incidents. The evidence was relevant as it went to show Davis' motive and intent for the stabbing. As for motive, Tallmon testified about the strangulation one week prior to the stabbing and how she decided to end her relationship with Davis. The jury could have found this motivated Davis to attack her on April 16. Indeed, the stabbing occurred on the same day Davis was forced to confront a change in housing by going to the housing authority. A visit which, as Tallmon explained, may have caused Davis to have a "dark aura," acting like something was "really wrong." 8 VRP (May 6, 2021) at 107. As for intent, both attacks shared critical similarities, including Davis yelling at Tallmon to "die" repeatedly, showing an intention to harm or kill Tallmon. 8 VRP (May 6, 2021) at 97, 113.

Because the purpose of the evidence went to proving motive and intent due to the close proximity in time and similarities between the attacks, the probative value of the evidence outweighed its prejudicial nature. The trial court did not abuse its discretion in admitting the evidence.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Davis next argues he received ineffective assistance of counsel because his defense counsel withdrew the third degree assault instruction that the trial court agreed to give, leaving the jury with no option for a third degree assault conviction. We disagree.

### A. LEGAL PRINCIPLES

Claims of ineffective assistance of counsel are reviewed de novo. *State v. Vazquez*, 198 Wn.2d 239, 249, 494 P.3d 424 (2021). To show they received ineffective assistance of counsel, an appellant must show that the attorney's performance was deficient and that the deficiency prejudiced the appellant. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (known as the "*Strickland* test"); *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 35, 296 P.3d 872 (2013). Failure to establish either prong is fatal to the claim. *Strickland*, 466 U.S. at 700.

Counsel's performance is deficient if it falls below an objective standard of reasonableness. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011), *cert. denied*, 574 U.S. 860 (2014). Generally, to show that trial counsel was deficient, " 'the defendant must show in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel.' " *Vazquez*, 198 Wn.2d at 248 (quoting *State v. McFarland*, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995)). A defendant must show that counsel's conduct cannot be explained by any conceivable legitimate tactic. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). We engage in a strong presumption that counsel's performance was reasonable. *Grier*, 171 Wn.2d at 33.

An "all or nothing" approach with respect to offering jury instructions is a legitimate trial strategy. *See id.* at 42-43 (finding an all or nothing approach was at least conceivably a legitimate

11

strategy to secure an acquittal). For example, our Supreme Court held defense counsel's choice to not seek a lesser included instruction of fourth degree assault where the defendant was charged with second degree assault was a legitimate "all or nothing" trial strategy because the lesser included instruction " 'would weaken the defendant's claim of innocence.' " *State v. Breitung*, 173 Wn.2d 393, 399-400, 267 P.3d 1012 (2011) (quoting *State v. Hassan*, 151 Wn. App. 209, 220, 211 P.3d 441 (2009)).

Lastly, a defendant must show they were prejudiced by defense counsel's deficiency. *Grier*, 171 Wn.2d at 34. "To satisfy the prejudice prong of the *Strickland* test, the defendant must establish that 'there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.' " *Id.* (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)). We must assume that if the State met its burden of proof for the highest degree offense instruction, the jury would have convicted on the highest included offense, therefore a lesser included offense "would not have changed the outcome of [the defendant's] trial." *Id.* at 43-44.

B.  APPLICATION

Davis argues his defense counsel was ineffective by withdrawing the third degree assault instruction the trial court agreed to give, precluding Davis an opportunity to be convicted of a nonstrike offense.[4] The State responds that defense counsel's withdrawal of the instruction should be seen as a legitimate trial tactic.

---

[4] Davis does not argue that the trial court erred by rejecting defense counsel's subsequent request for a third degree assault instruction based on the alternative of "substantial pain by extent of a period sufficient to cause considerable suffering." 14 VRP (May 18, 2021) at 740.

The first prong of the *Strickland* test is to determine whether defense counsel acted deficiently. Here, defense counsel employed an "all or nothing" approach. Davis testified that he did not stab Tallmon. Davis' counsel explained she withdrew the request for third degree assault because the weapon language in the instruction could "cut[] across his defense" that he did not stab Tallmon. 14 VRP (May 18, 2021) at 742.

It is not deficient to engage in a legitimate trial tactic. Considering Tallmon's significant injuries, defense counsel reasonably could have thought that providing the jury with a third degree assault option was counterproductive to her theory. If the instruction was given, counsel might have been left in the awkward position of arguing alternative theories. Arguing alternative theories is, of course, permissible, but defense counsel's disinclination to do so is clearly a legitimate trial tactic. *Breitung*, 173 Wn.2d at 400 (it was defense counsel's prerogative to not pursue a trial strategy that would weaken the defendant's claim of innocence). And, again, an "all or nothing" approach is a legitimate tactic. Because it cannot be said that the choice to withdraw the lesser degree instruction was not a legitimate trial tactic, Davis' counsel was not deficient for this choice.

Davis further criticizes defense counsel's performance by suggesting that she was ignorant of the fact that third degree assault was not a strike offense,[5] making her unaware that by withdrawing the third degree assault instruction, she was eliminating any chance at a nonpersistent offender sentence in the event of conviction. Citing to *State v. Estes*, 188 Wn.2d 450, 395 P.3d

---

[5] A persistent offender is someone who has been convicted of a most serious offense (also known as a strike offense) under RCW 9.94A.030(32) and has been twice previously convicted of a most serious offense. *State v. Estes*, 188 Wn.2d 450, 459, 395 P.3d 1045 (2017). Persistent offenders must be sentenced to life in prison without the possibility of release. RCW 9.94A.570.

1045 (2017), Davis argues that being ignorant of whether third degree assault is a strike offense is, by itself, deficient performance.

In *Estes*, our Supreme Court determined that when defense counsel was unaware that the weapon enhancements would elevate the offenses to third strikes, it was deficient performance. *Id.* at 463. *Estes* does not apply here. In this case, the record shows that Davis' defense counsel was clearly aware that Davis was potentially facing a third strike if convicted of either first or second degree assault when she stated, "You know, especially given the circumstances that, you know, Assault 2 is a strike as well." 14 VRP (May 18, 2021) at 742. But Davis has pointed to nothing in the record that shows defense counsel actually believed that third degree assault was also a strike offense. *See State v. Linville*, 191 Wn.2d 513, 524-25, 423 P.3d 842 (2018) (deficient performance must be evident from the record). Without any such indication, it strains common sense that defense counsel would be ignorant of this fact, especially given her clear knowledge of, and concern about, the consequences for convictions of first degree and second degree assault. The fact that withdrawing the third degree assault instruction removed an ability for the jury to convict on a nonstrike offense certainly goes to the consequences of counsel's tactical choices, but there is no showing of ignorance by defense counsel that would provide an independent reason to find deficient performance.

Lastly, even if defense counsel was deficient, Davis cannot establish prejudice by showing that the outcome of the proceedings would have been different by the inclusion of the third degree assault instruction. Since the jury convicted Davis of first degree assault, we must assume the giving of the lesser degree instruction would not have changed the outcome of the trial. *See Grier*, 171 Wn.2d at 43-44.

14

Because Davis can show neither deficient performance nor prejudice related to his defense counsel's decision to withdraw the third degree assault instruction the trial court was prepared to give, Davis' claim for ineffective assistance of counsel fails.

### III. STATEMENT OF ADDITIONAL GROUNDS (SAG)[6]

In his SAG, Davis raises four grounds for relief. We reject each ground.

#### A. PERSISTENT OFFENDER

Davis argues the State did not prove the required offenses for him to be sentenced as a persistent offender. He argues the State impermissibly relied on a conviction for failure to register as a sex offender offense to sentence him as a persistent offender. We disagree.

"A 'persistent offender' is one who has been convicted of any felony considered a 'most serious offense' under [RCW 9.94A.030(37)(a)(i)] and who has twice been previously convicted of such offenses or equivalent offenses in other states." *Estes*, 188 Wn.2d at 459. Second degree assault is a most serious offense. RCW 9.94A.030(32)(b). Under the POAA, persistent offenders must be sentenced to life in prison without the possibility of release. RCW 9.94A.570.

During Davis' sentencing hearing, the State presented the statement of criminal history, signed by defense counsel, which included two previous second degree assault convictions, one from 2001 and one from 2006. The State also presented Davis' judgment and sentence which included this prior criminal history.

From this criminal history, the State argued these two assault convictions amounted to his first two strikes. The trial court agreed that both of the two previous assault convictions combined

---

[6] RAP 10.10.

15

with his new first degree assault conviction totaled three strikes and, accordingly, sentenced Davis to life in prison under the POAA.

The record shows no reliance by the trial court on any previous sex offenses in this determination. Davis has not shown that the trial court relied on any failure to register as a sex offender conviction when it sentenced him under the POAA. Therefore, we reject this ground raised by Davis.

## B. DOUBLE JEOPARDY

Davis separately claims the POAA violates double jeopardy. We disagree.

Double jeopardy protects a defendant from " 'multiple punishments for the same offense imposed in the same proceeding.' " *State v. Womac*, 160 Wn.2d 643, 651, 160 P.3d 40 (2007) (quoting *In re Pers. Restraint of Percer*, 150 Wn.2d 41, 48-49, 75 P.3d 488 (2003)). Double jeopardy is violated when a defendant is " 'convicted of offenses that are identical both in fact and in law.' " *Id.* at 652 (quoting *State v. Calle*, 125 Wn.2d 769, 777, 888 P.2d 155 (1995)).

In this case, Davis was convicted of only one charge, first degree assault. There is no second conviction; double jeopardy protections are not, therefore, triggered.

## C. ADDITIONAL GROUNDS

Davis raises several additional claims in his SAG that are outside the scope of this appeal or are based on facts outside the record. Because we do not consider matters outside the scope of the direct appeal, or matters relying on evidence outside the record, we reject these additional claims. *State v. Barberio*, 121 Wn.2d 48, 50-51, 846 P.2d 519 (1993); *McFarland*, 127 Wn.2d at 338.

Davis states he was unconstitutionally civilly committed as a result of the State sentencing him as a persistent offender. Because Davis' sentence is a criminal sentence and there is no showing that he has been civilly committed in this case, this claim is not within the scope of this appeal.

Davis next says he received ineffective assistance of counsel because his defense counsel failed to advise him of the consequences of his civil commitment. Again, Davis was not civilly committed for his assault convictions. Because Davis fails to inform us of the nature of an alleged error, we decline to address this claim.

CONCLUSION

We affirm Davis' conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

GLASGOW, C.J.

WORSWICK, J.